We'll hear argument first this morning in Case 14-361, Ocasio v. United States. Mr. Davis. Mr. Chief Justice, and may it please the court. The Hobbs Act requires that a defendant obtain property from another. In this case, Mr. Ocasio was charged with conspiring with the owners of a repair shop not to obtain property from another, but from the owners themselves. The plain language of the Hobbs Act resolves this case. When two people agree that one will pay the other a bribe, they have merely agreed to exchange property between themselves, not to obtain property from another. The historical background, the statutory structure, and basic principles of criminal law all point in the same direction. There are no old English or state cases involving conspiracies to extort property from a co-conspirator. Does that mean that you would have to, in order to get at this venture, you would have to bring two separate prosecutions, one against your client for the extortion, and then a separate prosecution in State court against the body shop owners? Yes, Justice Ginsburg. I think that is correct. Maryland has a bribery statute that might apply in a situation like this, and Congress has passed a bribery statute targeted to bribery of state and local officials, 18 U.S.C. 666, that may or may not apply to the repair shop owners. But we don't think they could be convicted of- Is it well established, or even not well established, that you are obtaining property under color of law when you give somebody a bribe? Your Honor- It seems to me, what that means to me under color of law is you pretend to have a legal right to it, which in fact you don't have. Justice Scalia, until 1992, I think that was an open question. But this Court decided in Evans v. United States in 92 that Hobbs Act extortion encompasses the paying of bribes. I dissented, I assume. But, Your Honor, I think that the decision in Evans was really the high watermark of this Court's Hobbs Act jurisprudence. And since then, the Court has been careful not to expand the Hobbs Act. Well, we have stated that a person may be liable for conspiracy even though he was incapable of committing the substantive offense. Does that carry the day for the government's argument here, or is that distinguishable in principle? I think that's distinguishable in principle, Justice Kennedy. And why? Well, certainly not every conspirator must personally commit every element of the substantive offense. But he must not even be capable of it. Must not even be capable of it, as I understand what we've said. That's correct, Your Honor. Must not even be capable of committing every element of the substantive offense. But each conspirator must specifically intend that someone commit every element of the substantive offense. And why isn't that test satisfied here? Because the shop owners agreed that Mr. Ocasio would commit every element of the substantive offense. The shop owners, Your Honor, agreed that Mr. Ocasio would obtain property from another, not from themselves. So I think that the Mr. Ocasio is committing every element of the substantive offense. He is obtaining property from another. That is, he's obtaining property from the body shop owners. And the body shop owners agreed that he would do so. So it seems to me that in the normal way that conspiracy law works, there's a conspiracy here. Justice Kagan, I don't think that's quite right. I think that there must be a unity of purpose in conspiracy law. And Mr. Ocasio may have agreed to obtain property from another, but the body shop owners agreed to obtain property from themselves. So there's no unity of purpose. They only need to agree that he should obtain property from another. And that is exactly what they agreed to. Justice Kagan, I think the best way to approach your question is through imagining how this would happen in ordinary English. The government has a John and Susan, has its response to our John and Susan hypothetical in its brief. It says, John would go to Susan and say, let us agree that I will obtain property from another, namely you. And you notice how much work the words namely you are doing in the government's hypothetical. They're redefining the word another to mean the opposite of its ordinary meaning, not another. Is that any stranger than the Mann Act situation, where the woman who is being transported across state lines for immoral purposes conspires with the person who is transporting her across state lines? That's permissible, isn't it? Justice Alito, I think, yes, it is, in two distinctions from the Mann Act cases. The first is that the Mann Act used the phrase any woman, not another woman. I think that case would have been different if it had used the phrase another woman. Any woman is broader than another woman. Any woman means, you know, any of 3.5 billion-plus women in the world. And that subsumes another woman, doesn't it? I don't think so, Your Honor. I mean, I think that if a woman agreed to transport any woman, it makes sense to think that she could transport herself across state lines. But if the statute had said another woman, it doesn't make sense to say that she could have transported another woman when she was merely transporting herself. Well, they're two different words, but the syntactical problem seems to me to be identical, which is that it's just not natural to say that the transported woman is herself transporting any woman, right? I mean, the transported woman is not transporting any woman. But the reason the Court said that a conspiracy was possible there was because the transported woman could agree with another person, let's say the man, that the woman was transporting another woman, namely herself. It's an almost identical syntactical issue. I don't think so, Your Honor. I think that transporting another woman would create a much bigger textual issue than transporting any woman. If the woman goes to the man who's transporting her and says, I'd like to help you transport another woman, he would think that she is talking about someone else, not about herself. It's much more natural in the context of any woman. And the other reason those cases are distinguishable, Your Honor, is because they use the verb transport instead of obtain. It's conceivable to transport yourself. It's not really, doesn't really make sense to obtain property from yourself. So I think those are distinguishable on those grounds. What difference did it make in this, you're not contesting the extortion convictions, right? It's only the conspiracy, is that right? That's correct, Your Honor, with an asterisk. And that is if we were to prevail here, we would go back to the Fourth Circuit and ask to vacate the substantive convictions also on the basis of spillover prejudice. But for purposes of this appeal, you're correct. Did the addition of the conspiracy conviction affect the sentence? Would it have been different if there'd been no conspiracy charge? Your Honor, the sentences ran concurrently. The difference it made was $600 in restitution payments that were attributable to two acts of extortion that were not charged as substantive counts in the indictment. I have a small question, but not unimportant, which is, who paid the bribe, Majestic or the brothers? The brothers paid the bribes, Your Honor, out of- Out of their own pockets, or did they Majestic issue a check? Out of the Majestic bank account. So why isn't Majestic the other person here? Your Honor, the government forfeited any argument that Majestic is the another by not raising it at any stage in this court, either in its cert stage briefing or in the- Was Majestic a separate corporation or was it just a proprietorship owned? The record is a little unclear on that point. The testimony to the extent it shows anything shows that Majestic was an LLC and then it became a corporation at some point later. It's not clear when. But I think the government didn't raise that argument for a good reason. And that's because the testimony also showed that Moreno and Mejia were the sole owners of Majestic and that there was no difference between them in practical effect. So in practice, the money really came from Moreno and Mejia, not from- Moreno and Mejia are two people. They're not the same person, right? So I assume even if it was, let's say it was a partnership, they each would be entitled to half of the money, right? I think that's correct. So Moreno could conspire with Ocasio to obtain money from Mejia and Mejia could conspire with Ocasio to obtain money from Moreno. Your Honor, I don't think that that theory works in this case because the bribes came from them jointly. The payments came from them together. They were both aware of what each other were doing, and I think that they're indistinguishable for purposes of this. Did the government argue this proposition as a theory of this case in the trial court or here? No, not that theory of the case, Your Honor. You acknowledge that the police officer is guilty of a violation of the Hobbs Act. Never mind the conspiracy, but just the Hobbs Act violation. We're not directly challenging that here, Your Honor. Well, if you don't challenge that here, as I recall, your briefs say that to disagree with you in this case is to establish a federal law of bribery for the whole country. But it seems to me you have that once you acknowledge that never mind the conspiracy charge, but just the substantive Hobbs Act charge, that's a national bribery law, isn't it? Justice Scalia, on one side of the transaction, yes, on the public official side of the transaction. But this Court in Evans did not. Well, that's all you need to have a national law against bribery, it seems to me. You just get one of the two. I don't think you have to get both. Well, Your Honor, if this Court were to extend Evans in this case to cover not only the public official side of the transaction, but also the private citizen side of the transaction, that would be a dramatic expansion of the law of bribery. I mean, Evans may or may not have been correct, but I think it was the high water mark, and the Court has been careful not to extend it even further in the years since. What about, what do you do with the government's argument that Ocasio was conspiring with other police officers to get the money from another? In other words, that conspiracy got the money from another, the two individuals. Two responses to that, Your Honor. The first is that under the jury instructions, the jury could have convicted Ocasio based on a conspiracy solely between him and the repair shop owners. And under this court's decision in skilling, if the jury could have returned a legally invalid verdict, the conviction has to be reversed. And I think that's a sufficient answer to the question. But my second answer is that we disagree with the government that there was sufficient evidence in the record linking Ocasio with other police officers. The evidence showed only that these police officers were generally aware of what each other were doing. It didn't show that they formed an agreement to work together. And under this court's decision in Kotiakos, it was a hub and  I think if I'm remembering the government's response to your first point is that it certainly would have been harmless error in this case. Your Honor, I find that response a little difficult to understand. The trial overwhelmingly focused on linking Ocasio with Moreno and Mejia, not with other police officers. The vast majority of the testimony was about Moreno and Mejia forming an agreement with Ocasio. The government's whole case went through Moreno and Mejia. And the government would have had a much more difficult case if it had to prove an agreement between police officers to obtain property from Moreno and Mejia. There just wasn't that much evidence of such an agreement. Everything, again, went through that hub of Moreno and Mejia. So it's hard for me to imagine that it would have been harmless error, let alone that the jury would even have convicted if it had been instructed that it had to find an agreement between multiple police officers. Is there any difference to your argument based on the government's position that your client was charged under the General Conspiracy Statute and not the Hobbs Act statute? Justice Sotomayor, no, I don't think it makes a difference. The General Conspiracy Statute just leads the government straight back to the Hobbs Act. It punishes each person who conspires to commit an offense against the United States. The offense against the United States here is Hobbs Act extortion. One of its elements is the obtaining of property from another. So I think the General Conspiracy Statute leads right back to the Hobbs Act and just maybe an extra step. That's my problem, which is it's not an extra step. You can conspire if not every, you started by saying that not every conspirator has to commit every element of the crime. So why can't the General Conspiracy Statute do the work? Well, under the General Conspiracy Statute, just like under the Hobbs Act, Your Honor, every conspirator has to specifically intend that someone commit every element of the crime. I think that's been- Well, that begs Justice Kagan's question, which is they wanted Ocasio, they wanted the police officer to act under color of right and to take the bribe. And I think the key problem with that, Your Honor, is that the repair shop owners did not intend to help Ocasio obtain property from another. They intended to help Ocasio obtain property from themselves. And I think that's why there's not a unity of purpose here. I mean, everyone may have agreed on the same course of conduct, like the government says. And I think the only way the government can make its interpretation sound plausible is by obscuring the words from another. No, I don't think that's right. The from another is clearly an element of the substantive offense. But you're saying it should also be a freestanding limit on the conspiracy offense. And there's no reason for that to be true. It is, of course, right that somebody has to obtain property from another. But the conspiracy offense is made out if two people agree that somebody should obtain property from another. And that's exactly the situation here. Your Honor, I think that, again, the repair shop owners did not intend to obtain property from another. And I think the way that- They intended and they agreed that Mr. Ocasio should obtain property from another. And that's all they have to do. Your Honor, I think going back to how that kind of conversation would happen in ordinary English is a way to see why it's not plausible to read the statute like that. If the repair shop owners go to Ocasio and say, I want to help you obtain property from another. Ocasio would think that they're talking about someone else. I think the government's interpretation is much more formalistic. It's a statute. And the statute just says the other has to be somebody different from Ocasio himself. So in this particular case, the somebody other is the people who are in the agreement. In another case, the somebody other might be somebody who's outside the agreement. The statute just the substantive law says it has to be from another. The conspiracy, and this is just, it's consistent with Salinas, it's consistent with Holt. It's consistent with everything we've ever said about conspiracy law, is that it just has to be an agreement for somebody to do that substantive offense, even if the people agreeing can't do it themselves. And it's true, the people agreeing can't do it themselves. They can't obtain property from another. But Mr. Ocasio can, and they're agreeing that he should. Your Honor, even if that's a plausible interpretation of the statute, which we don't think it is, it's definitely not the most natural way to read it. If you talk to any non-lawyer about the statute, they would say that if you agree to form, if you agree to obtain property from another, you'd be talking about someone outside the conspiracy. The government's interpretation also requires you to figure out how someone can conspire to obtain their own consent. It requires shifting perspectives as you navigate your way through the statute. And I think that our interpretation is much more consistent with the way people would actually talk about this offense. I mean, in some form- What about eating and abetting? Could the brothers who own the body shop, could they be charged with eating and abetting? Justice- Extortion? Justice Ginsburg, I don't think that they could. I think the same textual problem would exist for aiding and abetting liability. 18 U.S.C. 2 is the general aiding and abetting statute, and it leads you straight back to the Hobbs Act in the same way that the general conspiracy statute does. So, I don't think so. Is it extortion or attempted extortion? If two brothers, as here, try to get money from a third party, and the third party really wants to give them the money, see, for example, he wants to give them the money because he's going to illustrate how awful the police are in that town. Or he gives them the money because he thinks it's funny. Or he gives them the money. Is that extortion? As I'm having trouble distinguishing between why it should be extortion, but not conspiracy for extortion, because that's what you're aiming at. You're prepared to say, okay, it's extortion. Well, if it's extortion, you've heard all the arguments, then why can't these other people commit it, and you're simply helping them? But is it extortion? Your Honor, this Court has defined extortion in Evans to mean, to basically mean when a public official takes a bribe, and, you know, we take that holding as a given. But he takes a bribe, all right? Is it a bribe when the person just showers him with money, hoping for nothing illegal? No. He might think it's a bribe. But is it? Well, Your Honor, there has to be — He voluntarily gives him the money, expecting joy and happiness. I mean, you see, that's where it seems to be the odd part of the case lies. Well, Your Honor, I think if he just gave him, showered him with gifts, not expecting anything, it would not be extortion, because there has to be a quid pro quo. The money has to be paid in return for specific official acts. So that would not be an act of — All right. So if bribe, then we're back. If bribery is extortion. Then why isn't conspiracy to commit bribery conspiracy to commit extortion? We're back where we began. The odd thing is in calling bribery extortion. Once you cross that bridge — You've been here forever. But, you know, I know that's what we started, but we're back — in my mind, I've sort of got back where we started. And you're trying to drive a wedge there, and all your arguments seem to me really to be aimed at why are we calling bribery extortion. I don't — Because they are showering with money. They love it. Your Honor, we're not taking direct aim at Evans, and I don't — I know that, but I mean, how you're asking me to make that distinction. How do I do it? Well, Your Honor, I think Evans dealt with a substantive offense, and this case deals with conspiracy. And when you overlay a conspiratorial agreement on top of this substantive offense, it just stops making sense grammatically to talk about the offense the way the government does. Again, when two people reach an agreement that one will pay the other one a bribe, it just — it doesn't make sense of ordinary English to say that they're agreeing to obtain property from someone else, from another. I also think, you know, that — I don't want the phrase, with his consent, to get lost here also. The Hobbs Act punishes the obtaining of property with his — from another with his consent. And as Judge Sutton explained in the Brock decision, how can someone conspire — how would or why — how could or why would someone conspire to obtain their own consent? So even if you don't agree with us on the — on the from another language, I think the with his consent language does it as well. And then the other textual point — Well, before you — I mean, what the government says, of course, is there's — there's consent and there's consent. And they suggest that there's a difference between consent and conspiracy. Right? Right. Well, what's your answer to that? Well, we agree with that, Your Honor. We think that there are plenty of instances of consent under the Hobbs Act that would not be a conspiratorial agreement. But it's hard to see what payment of a bribe would not be a conspiratorial agreement under the government's theory. Maybe there's some narrow category of cases where the bribe payer is just acquiescing to an official demand as — And what payment of a bribe is not extortion. I — I agree, Your Honor. I think — All right. So the only ground, then, we could say is say, well, they went just up to the limit of the logic in the other case, and we're just not going to be logical to extend it further. I think — Is that — I don't think that's quite right, Your Honor. Works for me. I think that is a ground, Your Honor. I don't think it's the only ground. I think the other ground would be the plain text of the statute. I mean, Evans — in Evans, the government didn't have the same textual problem that it has in this case. The government didn't have to grapple with a from another language. And in this case, from another most naturally means someone outside the conspiracy. The other point, textual point, I'd like to — Mr. Davis, if you could go back to what you just said about the consent. I mean, look, I mean, Evans makes perfectly clear that bribes and kickbacks are included in this statute. And — and there is a difference between — there — there are cases in which somebody participates in a kickback scheme and does not consent. I mean, suppose some public official comes in and says, in order for me to give you a license to do something, to be, you know, a member of some profession, let's say a cosmo — cosmetologist, you need to pay me $20 as a kickback. And the person, you know, pays him $20 because you've got to get your license. But there's no way in the world in which that would count as a conspiratorial agreement. It would count as consent under the Hobbs Act. So there's a big gap between consent and a conspiratorial agreement, even in the context of bribes. Justice Kagan, I don't disagree with you, but with an asterisk. I think there is a gray area there where someone just acquiesces to an official demand, like you're saying. Those may not be conspiratorial agreements. But I think still there is a large category of bribery cases that would — would still be conspiratorial agreements under the government's theory. Any time someone, like in Salinas, pays a bribe in exchange for official action and wasn't required to do so. So I think still the government's theory would render some of the language in 666 unnecessary. You know, 18 U.S.C. 666 has specific monetary thresholds put on when a bribe is a Federal crime. You know, the amount of the bribe has to be over $5,000. The State official has to work for an agency that receives $10,000 or more in Federal funds. And I think in a lot of those cases, the government could just avoid those limitations by charging the case as a conspiracy to commit extortion under the Hobbs Act. And that's even though there may be a category of cases that would not be a conspiratorial agreement, but that would be consent under the Hobbs Act. On one more textual point, Your Honors, the statute also punishes whoever conspires to obtain property from another, which I think reinforces our reading that the whoever who obtains the property has to be a different person from the another from whom property is obtained. And I think the general conspiracy statute gets to the same place by just a slightly more circuitous route. It punishes each person who conspires to commit any offense against the United States. Alito, is it fair to say that you are advancing an argument that is limited to the Hobbs Act? You are not taking issue with the proposition that a person can conspire to commit offense that the person could not personally commit, and you distinguish the Hobbs Act from the Mann Act because one refers to any and another refers to another. So is it fair to say that what you want is a special conspiracy rule that applies only in cases of Hobbs Act conspiracies? No, Your Honor. I think that what we are asking for is just to apply the language of the general conspiracy statute in light of the words from another in the Hobbs Act. And when you put the two together. And if another substantive offense doesn't have the word obtain property from the phrase, obtain property from another, then your rule doesn't apply. I think that's generally right, Your Honor. Our textual arguments would not apply. I think there would still be an issue of, you know, there's a principle that when an offense necessarily requires agreement, you are not supposed to add a conspiracy charge on that, but that's just a presumption. I think you are right that our textual argument would not apply in the absence of the words another, with his consent, and whoever. If there are no further questions, I would like to reserve my time for rebuttal. Thank you, counsel. Mr. Kedem. Mr. Kedem. Mr. Chief Justice, and may it please the Court. A conspiracy is an agreement to commit an offense against the United States. That is, a joint commitment to a plan that, if completed, would satisfy all elements of the substantive offense. And while all conspirators must agree on that goal, no particular member of the conspiracy must agree that he himself will commit all or even any of the substantive elements of the offense. And so you don't ask whether all conspirators or the conspiracy as a whole agreed to obtain property from another, any more than you would ask whether the conspiracy as a whole acted under color of official right. Kennedy, do you agree that under your approach, every private individual who seeks to bribe a State official is liable for conspiracy to commit Hobbs Act extortion? We don't, and that's because of active participation. Let me explain where that comes from and then how it applies to this case. Holt and Gibardi concerned the Mann Act, which prohibited the transportation of a woman across State lines for immoral purposes. And the question was whether a woman who was transported could conspire to violate the act. In answering that question, the Court focused on two things. First of all, although the act contemplates the involvement of the woman, it doesn't impose substantive criminal liability on her. And second, some minimal form of agreement is an inherent feature of most instances of the offense. Based on those two factors, the Court said if that's all there is, if the only thing that the woman agrees to is to the transportation itself, that is, the bare outlines of the crime, that by itself would be insufficient to make her a conspirator. But if she were to agree to do more, if, for instance, she were to purchase the tickets or to arrange the transportation in some other way, then she could be a conspirator. And so in this case, with respect to a bribe-payer, if all the bribe-payer agrees to do is turn over money in return for official acts, that by itself would be insufficient to make the bribe-payer a conspirator. Kennedy, Well, suppose he arranges to meet on the park bench at 2 o'clock and has a follow-up call to the official to please be there. Does that suffice? I think that would be incidental to the one thing that they're really agreeing to do, which is to turn over the money. But contrast that with what happened in this case, because Moreno and Mejia didn't just hand over an envelope with $100 bills in it. They worked closely in conjunction with police officers, including Petitioner. For instance, when Petitioner went to the scene of an accident, he would call Moreno and they would talk about what cars were involved, the make, model, the year, what extent of damage was involved. And then Moreno would consult with Petitioner about which cars would be most lucrative to have in the shop. And so it wasn't simply a case of agreeing to the bare outlines of the crime. He agreed to facilitate it in additional ways. Sotomayor, how do you charge that to a jury? Pardon? Sotomayor, how do you charge it to a jury? I think you would tell the jury two things. First, in order for a bribe-payer to be a conspirator, they have to agree to actively participate in the plan. And second — Sotomayor, I mean, I'm a juror, and I say, I — a police officer came to me, asked me for 20 bucks, and he'll let me go from my ticket. I'm active in participation. That's what I'm thinking. The second one is that you would have to tell the jury that if all you've agreed to do is to turn over money in return for official acts, that that by itself is insufficient. I mean, that's lovely. And that, you know, that prevents this law from — Federal law from hitting anybody who pays a bribe, which is certainly a desirable result, but I don't see how it comports with your theory of the case. I mean, there is just as much of an agreement between the two people to obtain money from another, whether that other actively participates or not. Where do you get this active participation requirement from, except to make it up to sweeten the deal so that — so that we don't extend this law too far? Active participation comes from Holt and Gibardi, and it's also notable that the government didn't make up the requirement for purposes of this case. The First, Second, Fourth, and Fifth Circuits have used active participation in the context of Hobbs Act extortion. And where did they get it from? They get it from Holt. And where did Holt and Gibardi get it from? I think Holt and Gibardi see it as a gloss on the type of agreement that's necessary to make a particular person a conspirator. Scalia But that's not what conspiracy law says. It's any agreement. If you agree, you're liable to conspiracy. Where do — can you hang on this active — is there an active participation requirement for other conspiracies? In this Court's case in Abwell-Hawa, which is cited at footnote 8 in our brief, the Court also relied on Gibardi to raise the level of facilitation that would be required for a drug purchaser to be held liable for facilitating the sale of a drug. But I think that's a— Roberts But where is the active participation point in the jury instructions? It's not in the jury instructions because Petitioner never requested it, despite the fact that active participation was already the law in the Fourth Circuit. I would also point out that it was Petitioner's argument that it simply doesn't matter how actively a bribe-payer facilitates the extortion. Moreover, there was no dispute in this case that Moreno and Mejia played an active role. In fact, it was Petitioner's contention at trial that they were, in fact, the masterminds of the scheme. Justice Scalia, if you don't like active participation, then you would simply revert to the common-law standard in which agreeing to the outlines of the crime would be sufficient, even if you were a bribe-payer. Sotomayor That makes sense to me. Kagan If I could just understand what you're saying. You think active participation is more than an agreement along the typical conspiracy lines? I think normally agreeing to the bare outlines of the crime would be sufficient for most conspirators. I think Would? Would. That's correct. But I think active participation is a way to raise the threshold for certain types of crimes. Right. But it just does sound more like an aiding and abetting standard than it does a conspiracy standard, because typically in conspiracy we say it doesn't really matter if you actively participate as long as you reach an agreement. Now, that agreement is more than acquiescence, right? It's more than I reluctantly give you the bribe that you're demanding of me. That's right. But I guess I'm with Justice Scalia that I don't really quite understand how to get from the typical real agreement that we require in conspiracy cases to some higher standard with respect to this crime of active participation. I think it's a gloss on what you have to agree to do in order to be considered a conspirator. So it's true that the agreement itself is what's criminal when it comes to a conspiracy, whereas with aiding and abetting it's acts. And I think it's a similar inquiry. With aiding and abetting you act, you ask, did you actively participate in the crime? And with conspiracy you ask, did you agree to actively participate in the crime? If I could attack — if I could refer to my friend's argument about unity of purpose, he's correct that there does need to be a unity of purpose, but he's incorrect as to what that purpose needs to be. Under Salinas, all members of the conspiracy must agree on a plan that is an offense against the United States, that is, an offense, a plan that if completed would satisfy all elements of the substantive offense. And Petitioner says Evans was the high watermark in interpreting the Hobbs Act. But the other thing is that the — Breyer. The answer, as I understand this now, the purpose of this active participation doctrine is let's look at the substantive offense. All of a sudden we're saying every policeman, every State official, everyone in the country who goes to any person and says, give me some money, huh, for my position, they're already guilty. That already is extortion on this case that we've been talking about before, right? That's right. Okay. So now what you're going to do is you're going to make not only them guilty of the Federal crime, they're going to make anybody who pays them guilty of the Federal crime. That's the purpose of this case. Now, you say don't worry about it, because there's situation A and situation B. In situation A, the policeman is the heavy, and all the victim's done is stop at the traffic light. He says, give me the money, and that's a bribe, all right? He's a bad guy, the policeman, the victim is not so bad. But in the other case, the victim says, I love it, like these people, because we're really getting money from the public. That's what they're trying to do. Who are the real victims here, but they're not, that's not charged that way. And that's what the active participation thing is designed to do, separate the sort of innocent victims who aren't policemen from the cooperating victims who love the policemen to take the money because they want the result. Is that right? I think that's correct. Breyer. I've got it right so far. The argument on his side is, don't make a bad situation worse. We already are federalizing vast numbers of State crimes, which really are the State's business. And now you're not necessarily doubling the number, but you're increasing it by about 80 percent. Now, that's what I've got as a practical argument that he's making. And your answer to that is, don't worry, it's not your business, it's just follow the logic. I think under active participation, you wouldn't be doing that. I understand it. I would also point, pardon me. Well, I'm interested if I understand it correctly. I think you do, Your Honor. I would also point out that the argument he makes with regard to from another has nothing in particular to do with the Hobbs Act. It would apply any time a statute uses phrases like from another or to another. And let me give you an example. Before you do, I'm still stuck on the jury instructions. You cite in your brief language on Joint Appendix page 195 where the judge says — I think these are the instructions, maybe I'm wrong, but you cite them — where the judge says mere knowledge or acquiescence without participation in the unlawful plan is not sufficient. Is that — that's the language I take it you're talking about, where the jury was instructed? That was given to the jury, but I think that's the standard conspiracy instruction. Well, on page 194, it says the extent of a defendant's participation has no bearing on the issue of his guilt. And I just wonder whether your active participation, that suggests to me something that goes to the extent of the defendant's participation. That's right. A different instruction would be given, but it's important to emphasize that Petitioner did not appeal the failure to give a specific jury instruction. He didn't request one, and that was not the basis for appeal. He had a sufficiency of the evidence challenge on appeal, and that's what's before this Court. Moreover, there is overwhelming evidence that Moreno and Mejia did, in fact, actively participate. In fact, that was Petitioner's very theory at trial. But let me give you an example of how Petitioner's argument with regard to from another does not necessarily only focus on the Hobbs Act. Imagine, for instance, there was a statute that said if you steal from a bank while And imagine a robber says to his friend, you go into the bank ahead of me, I'll run in, point a gun at your head, and say, cashier, give me all of your money. According to Petitioner, that would not be conspiracy, because judged from the perspective of the conspiracy as a whole, no gun was pointed at another. And at base, Petitioner's argument is that every element of the substantive offense has to be judged in a conspiracy from the perspective of the conspiracy as a single, undifferentiated whole. A couple of responses to that. First of all, it's not even clear what that means. For instance, how it could be that a conspiracy as a whole obtains property under color of official right. Second of all, it contradicts the very premise behind conspiracy liability, which is that different members of the conspiracy agree to play different roles. And it's only when you add those various roles together that you get the completed offense. Scalia. I'm afraid you haven't scared me. I don't think that in the situation you posit, where the two gunmen say, you come into the bank with me and I'll point the gun at your head, and what, say, unless you cough up the money, I'm going to shoot my friend? I don't see why that would be a conspiracy to point a gun at another. I don't think, Justice Scalia, you would say, give me the money or I'll kill my friend. I think the friend would pretend to be a customer in the bank. Sure. But, well — And I think the two of them would have formed a plan in order to accomplish the aggravated bank robbery. And I would not think that that's a conspiracy to point a gun at another. Well, Justice — It's a conspiracy to point a gun between themselves. Justice Scalia, I think that only is true if you judge each element of the offense — No, I understand, but you were trying to present a clear example. Sure. And it doesn't seem to me very clear at all. Justice Scalia, we cite about a half-dozen other Federal statutes that also similarly use phrases like, from another and to another, that would be similarly affected by Petitioner's argument. I would also like to address — But the other reason your hypothetical doesn't work too well is we know that he's not going to pull the gun because he's his friend. But in this case, the money is going to be given, so it doesn't work. Well, Justice Kennedy, I would point you then to the statute that we cite that talks about someone who is a government official who receives coded secret information from another and provides it to another. Petitioner's only response is there may be some other statute that you could prosecute under in the case in which the from another and the to another are both officials of other governments. But what if they're not? What if they're officials — what if they're members of a terrorist organization, for instance? I'd like to also address my friend's argument with respect to the word whoever in subsection A. I don't think it works for a couple reasons. First of all, the word whoever in subsection A, and this is best addressed if looking directly at the words of the statute at page 2A to the appendix to our brief. Whoever in subsection A is not the subject of the phrase obtaining a property from another in subsection B-2. If it were, then no private citizen could ever be member of a conspiracy because no private citizen can obtain property from another under color of official right. Instead, the word whoever is the subject of the phrase obstructs, delays, or affects commerce by extortion or agrees or conspires so to do. And to give you an example of how that can be affected, even if you yourself are not the person who commits the extortion, imagine a case of robbery in which there's a central organizer who brings together robbers who have various skills and gives them a plan, but doesn't himself intend to participate in the robbery. In that case, he would have conspired to obstruct, delay, or affect commerce by robbery, even though he himself would not be committing robbery. And the same is true with respect to extortion. Moreno and Mejia were part of a plan which they actively facilitated that obstructed, delayed, and affected commerce by extortion. Breyer. Well, is it, is it, if, but, I'm still, a crime requires that the victim give consent. Now, what kind of, it could be obtaining consent to do something. Smith obtains consent to do something. The victim agrees with Smith to participate in that crime. But in agreeing to do it, he is giving consent. So from that point on, there is no further consent to be given. So it's like robbing the pocket of a stone idol, or some, what used to be called in law school, once the consent is given. So maybe he is agreeing to participate in a conspiracy to attempt to get the consent. But, but he's agreeing to the, he gives the consent at the moment he agrees. Justice Breyer. So how can you be conspiring to, to, to, to do something to get a consent that was already given? Justice Breyer. You could conspire to attempt to get it, but not to get it. If you're being really picky on these words. The issue of consent is really a red herring in this case, because as my friend just stated, consent from the common law for extortion falls well below the meeting of the minds that you would need for a conspiratorial agreement. And that much is made clear by the fact that even in cases of coercive extortion, that is, extortion induced by wrongful use of actual or threatened force, violence or fear, you would still need consent. And so the type of agreement that we're talking about, with or without the active participation requirement, is well above the threshold for consent under the common law. Roberts. You haven't talked about Majestic yet, and your, your friend said that's maybe because you had never raised that below. Is that, is that true? In other words, that Majestic is the other from which the funds are going to be obtained? That's not accurate. It was raised in the trial court. The trial court made a ruling that Majestic was also another, and the court of appeals decided not to adopt that argument. We haven't pursued it in this court. I would also point out. Was that just to put, was that in your brief in opposition to certiorari? We talked about the fact that in this case, you could look at Majestic as another, and we talked about that in the context of the Brock case out of the Sixth Circuit. But we are not. Majestic, a proprietorship, sole proprietorship. It started out as an LLC but became a corporation, as cited at footnote 1 of our brief. Was it indicted as part of this crime? It wasn't indicted, but it was in the indictment stated that money came from Majestic. Sotomayor, you do say in your brief that if we adopt the Petitioner's argument that basically you would never have any cases. But I'm not sure that's right. For example, the most common situation is the New York City permitting official. Generally, they agree with developers to have contractors pay them a bribe to expedite their work. That you could prosecute, because two people are agreeing to get money from another, the contractors. Are those situations are not so unusual? I think as one of my colleagues said, there was a conspiracy here to get money from the victims. I don't think, Justice Sotomayor, that our argument is you would never have instances in which the conspiracy provision would apply. I think what we're saying is this is precisely the type of scenario in which conspiracy liability should attach. And I think there may be a sense by some that clever prosecutors maybe in some cases are pushing the bounds of conspiracy law beyond where they traditionally have gone and using it in ways that perhaps are not warranted. Whatever the merits of that criticism as a general matter, this is not that case. The criminal conspiracy in this case was a durable, multifaceted criminal enterprise that had a division of labor and succeeded over the course of several years in committing not only numerous acts of extortion, but other forms of illegality as well. You had no other substantive crime to charge against the brothers? The brothers also pled guilty to aiding and abetting extortion, which under Petitioner's Why didn't you just charge them with getting money from the customers? I mean, that's who they're conspiring. I mean, after all, they give them $150 to the policemen. They aren't philanthropists. They think they're going to get that money back from the people whose cars are wrecked. That's correct. They could also go to the other people. I mean, this is really a conspiracy on behalf of the policemen and the owner of the repair shop to get money from a customer, a person whose car was wrecked. That's why they do it, isn't it? That is true, Justice Breyer, but they didn't necessarily commit a crime against the customer if all they did is repair the customer's car. Now, they did also commit various forms of insurance fraud, but put that to the side. In this scheme, if all they did was get money from a customer and fix the car as promised, then they would not have committed a crime necessarily against the customer. And indeed, isn't it right that what Justice Breyer is saying was the very theory behind Evans why this was extortion? It's because the real crime was to the public at large, not to any particular customer, but, yes, there was a crime to the general public. That's correct. The victim in cases of extortion is not necessarily the person who pays the bribe, who might do so willingly and might do so in order to get something from the public official. And the Federal Government's interest in this case, right, the reason is what? Well, Justice Scalia ‑‑ Is it that automobiles are instruments of interstate commerce? Justice Scalia, I think Evans settled that the mere receipt of a bribe in return for performing official acts is, in fact, extortion. And I don't think that's at issue here. Oh. Oh. There doesn't have to be any Federal constitutional authority? Just ‑‑ There does have to be constitutional authority. Well, what is it? I mean, here it is. I assume that it's automobiles. That's ‑‑ Well, Justice Scalia, it's affecting commerce, and there was evidence at trial that, for instance, insurance payments came from out of State, and that was specifically used to show the affecting commerce element. I would also point out that if you were simply to charge Petitioner with three isolated instances of extortion, of the substantive act of extortion, it would not reflect the full range of his misconduct. Because, again, he didn't simply receive money and then refer cars for it. He worked closely in conjunction with Moreno and Mejia. You agree with your friend's point, though, that charging the conspiracy gives the prosecutor considerably broader range in the evidence that he wants to admit at trial? I think that that does sometimes happen, but that's a general principle that has no specific relation to the argument that Petitioner is making in this case. What is the relationship between that argument and the question of whether there's a conspiracy between Ocasio and Moreno and Mejia? It might apply to the conspiracy between ‑‑ the alleged conspiracy between Ocasio and the other police officers, because it ‑‑ although it could allow the ‑‑ make it easier to admit evidence of what the other police officers did. That's right. But the ‑‑ what it has not ‑‑ the ‑‑ whether or not there was a conspiracy between Ocasio and Moreno and Mejia doesn't seem to me to have anything ‑‑ anything to do with what evidence would be admissible at trial. That's right, Justice Alito. I thought you told me that was wrong. I thought you told me you agreed with your friend that it gives broader scope to the range of evidence that could be admitted beyond charging simply the substantive offense. It does, Mr. Chief Justice, but that would still have been true even if Moreno and Mejia were not charged as co-conspirators, because there was voluminous evidence, and we cited in the last portion of our brief that Petitioner conspired with other police officers as well. For instance, he was recruited into the scheme by another police officer, probably Officer Rodriguez, who was indicted along with him. Do you agree that the most that that gets you is a remand to address the Skilling question? We don't. We don't. Skilling was an issue about jury instructions, and again, Petitioner's challenge in the court of appeals as it ‑‑ and as it comes to this Court is not about the jury instructions. I would point you instead to Griffin v. United States 502 U.S. 46, which talks about sufficiency challenges, which is what this is. And if you look at that evidence, not only was Petitioner recruited by other officers, he himself tried to recruit other officers into the scheme, for instance, trying to set up his own referral network. Moreover, there was evidence that he and Officer Rodriguez worked together on at least one occasion to bring a car into Majestic. Is it a sufficiency ‑‑ I would have thought it's a statutory interpretation challenge and not simply a sufficiency of the evidence challenge. Well, Mr. Chief Justice, I don't think there was a specific instruction to the jury one way or another about whether they either could or couldn't find it just based on Moreno and Mejia. And as a result, because there was a general verdict, you don't know specifically whether the jury relied on Moreno and Mejia alone or whether they also relied on other officers. And under that circumstance, I think Griffin says it's just a general sufficiency challenge. Well, on that, I guess your friend says that the whole thrust of the case you presented was based on the conspiracy between the two brothers and the officer, rather than the spokes, I guess, is the jargon involving the different officers with Acasio. Is that true? We don't think that's true. I would refer you to all of the evidence we cite in the last section of our brief. This was the way it was indicted. The indictment itself said that Petitioner conspired with other officers. It was also specifically cited in the closing argument to the jury that they were able to find that he had conspired with other officers, and there was a great deal of evidence that he did so. I think that's a harmless error. Assuming we agree with the Petitioner and say the other has to be somebody else. We don't think that it's a harmless error, but I do take your point that it's an alternative grounds for holding for the government. So you think it's sufficiency? I do. I think that's what Griffin v. United States says. Are there no further questions? Thank you, Counsel. Mr. Davis, you have four minutes remaining. Thank you. I'll start with my friend's Griffin point. We directly challenged the jury instructions in our brief in this court, and the government did not raise any sort of argument that this was just a sufficiency case there. So I think that is water under the bridge. Did you challenge the instructions in the district court as well? We challenged the jury instructions in the district court. Yes, Your Honor. There was an objection raised to the government's proposed instructions there. I'd like to turn to the active participant standard. We agree with Justice Scalia that the active participant standard doesn't come from anything in the statute or anything in basic principles of conspiracy law. Conspiracy just requires an agreement and sometimes an overt act, and this active participant standard doesn't map on well to that at all. The government, the cases that the government cites that supposedly applied Holt and Gabbardi to Hobbs Act prosecutions really dealt with aiding and abetting, not with conspiracy. And it's much easier to see how the active participant standard applies in the context of aiding and abetting, which requires acts beyond mere agreement. But in the context of conspiracy, the only court really to have applied the active participant standard to conspiracy in any significant way was the Fourth Circuit in the Spitler decision. You and your answer get to what I think is the main point, the main point being, look, two policemen and a shop owner. The policemen say, give us money and we'll help you out later. That's extortion. If that's extortion, then why isn't it conspiracy when three weeks before they meet and bit by bit say, we will do that very thing, which is extortion? The shopkeeper is helping the policeman do what is the thing that counts as extortion, and therefore he's conspired with them. That's their very simple argument. The simple answer is? The simple answer is that's not consistent with ordinary English, Your Honor. When two people, when the repair shop owners go to the public official and say, I'd like to help you obtain property from another. Yeah, the other, another means another other than the two policemen. That's what this other case says and law says. It's another, another other than them. I think the only way the government can make that sound plausible is by adding words to the statute. No, no, no words. Another, another. Joe and Bill are the policemen. Sam is the shopkeeper. In the substantive crime, the other, another means not the two policemen. It means Sam. And Sam, two weeks earlier, helped and conspired with the two policemen to get money from another, namely Sam. Odd, but English. Justice Breyer, I think the words namely Sam are doing all the work there. If you cut out the words namely Sam, all of a sudden it doesn't make sense anymore. If he goes to the police officers and says, let me help you obtain property from another, you need to add words to the statute in order for that to make sense. Mr. Davis, I don't think you need to add words. What you need is to shift perspective. There is a difference here, but that's the difference. That the government is insisting that you look at it from the perspective of the person who, in this case, is doing the acts of obtaining property from another. And you are insisting that it be looked at from the perspective of the person who has agreed to help him do that. But there's no reason under standard conspiracy law that we would use the perspective of the aggrier rather than the perspective of the perpetrator. Justice Kagan, with respect, I don't agree with that. I think that under standard conspiracy law, you look at the perspective of both. You have to have a unity of purpose with each conspirator to do the same. There absolutely is a unity of purpose that one person should do the crime. Your Honor. Go ahead. With the unity of, that obscures the words from another from the statute. There may be a unity of purpose that they all do something, but it begs the question about whether the something that they're doing violates every element of the offense. Thank you, counsel. The case is submitted.